**Janet S. MILLIKEN, Appellant,**

v.

**Kathleen JACONO and Joseph Jacono and Cascia Corporation, Trading as Re/Max Town & Country and Fran Day and Thomas O'Neill and John Restrepo and Fox & Roach LP, Trading As Prudential Fox & Roach Realtors.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2012.
Filed Dec. 26, 2012.

Timothy F. Rayne, Kennett Square, for appellant.

Abraham C. Reich, Philadelphia, for Cascia, appellee.

J. Scott Watson, Glen Mills, for Jacono, appellees.

BEFORE: FORD ELLIOTT, P.J.E., MUSMANNO, BENDER, DONOHUE, SHOGAN, LAZARUS, MUNDY, OLSON, WECHT, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Janet S. Milliken ("Buyer") appeals from the order granting summary judgment in favor of Kathleen and Joseph Jacono ("Sellers") and their agents, Fran Day and Thomas O'Neil, employed by the Cascia Corporation, trading as RE/MAX Town & Country ("Agents").[1] Buyer claims that the trial court erred in granting Sellers' and Agents' motions for summary judgment on several claims arising from the 2007 sale of a house to Buyer without Sellers or Agents disclosing to Buyer that a murder/suicide of a husband and wife

had occurred in the house in 2006. Finding no error, we affirm.

The trial court set forth the procedural and factual history of this case as follows:

### PROCEDURAL HISTORY

On November 24, 2008, Plaintiff Janet S. Milliken filed a Complaint against Defendants Kathleen Jacono and Joseph Jacono (hereinafter the "Jacono Defendants"), as well as the two real estate firms in the underlying transaction. The Jacono Defendants were the prior owners and sellers of the property to the Plaintiff Milliken. Defendants, Cascia Corporation, trading as Re/Max Town & Country, Fran Day and Thomas O'Neill (hereinafter, the "Re/Max Defendants") were the listing agents that represented the Jacono Defendants for the sale of the property. Defendants, Fox & Roach, LP, trading as Prudential Fox & Roach Realtors, John Restrepo (hereinafter "Fox & Roach Defendants"), represented the Plaintiff in the purchase of the property as her broker and agent.

Plaintiff's Complaint alleges fraud and misrepresentation regarding the sale of the property without disclosing the death of the individuals who owned the property prior to the Jacono Defendants owning it. The Complaint sets forth four (4) counts against the Jacono Defendants: Count I—Breach of Real Estate Seller Disclosure Law, Count III—Negligent Representation, Count V—Fraud, and Count VII—violation of the Unfair Trade Practices and Consumer Protection Law. The Jacono Defendants filed an Answer with New Matter and Crossclaims on May 18, 2009. On June 10, 2010, the Jacono Defendants filed

[1] Buyer's claims against her own real estate agent, John Restrepo, and his employer, Fox & Roach LP, trading as Prudential Fox & Roach Realtors, were settled.

[motions] for Summary Judgment, which this Court granted. Plaintiff appealed.

### FACTS

1. On February 11, 2006, the owner of the property prior to the Jacono Defendants, Konstantinos Koumboulis, allegedly shot his wife and himself at that property.

2. The Jacono Defendants purchased the property from the Koumboulis Estate at a real estate auction on September 23, 2006.

3. On May 1, 2007, a Consumer Notice was signed by Plaintiff Milliken and Mr. Restrepo regarding duties of real estate professionals which notes that buyer's agents have a duty of confidentiality except for the disclosure of known material defects about the property.

4. Defendant, Mr. Jacono, spoke with Brian Collins and Judith Schulder, representatives of the Pennsylvania Real Estate Commission, who confirmed that the murder/suicide was not a material defect that needed to be disclosed.

5. Mr. Jacono's conversation with Ms. Schulder of the Pennsylvania Real Estate Commission was later memorialized in electronic correspondence.

6. After Mr. Jacono's conversations with the representatives of the Pennsylvania Real Estate Commission, the Jacono Defendants entered into a Listing Agreement for sale of the property with the Re/Max Defendants on June 4, 2007.

7. After entering into the Listing Agreement with the Jacono Defendants, the Re/Max Defendants called the Pennsylvania Association of Realtors Legal Hotline and were told that the murder/suicide was not a material defect which required disclosure.

8. The Re/Max Defendants also performed internet research to confirm these findings and produced an article regarding disclosure of material defects.

9. On June 17, 2007, an Agreement of Sale for 12 Pickering Trail was signed by Plaintiff and the Jacono Defendants.

10. The Seller Property Disclosure Statement dated June 17, 2007 does not disclose the murder/suicide as a known material defect.

11. The Seller Property Disclosure Statement indicates that the property was last occupied in March 2006, and that the Jaconos have owned the property for seven months.

12. Plaintiff alleges that she was unaware of the murder/suicide until three weeks after she moved into the property, allegedly sometime in September 2007.

13. Plaintiff also alleges that she proceeded with the transaction under the presumption that there was a foreclosure involved with the Jacono Defendants' purchase of the property.

14. On June 20, 2007, the Re/Max Defendants mailed the Thornbury Hunt Owners' Association Documents to Plaintiff Milliken which listed Konstantinos Koumboulis as the owner of the Property.

15. On July 6, 2007, Plaintiff Milliken signed an acknowledgement of receipt of the Thornbury Hunt Owners' Association Documents.

16. Despite receiving the Thornbury Hunt Owners' Association Documents before closing, Plaintiff did not review them or investigate Mr. Koumboulis' ownership.

17. Plaintiff admits at her deposition that she reviewed the Title Report from Trident dated July 18, 2007 before closing.

18. The Title Report included a statement that this property was conveyed by the Estate of Kostantinos Koumboulis and Estate of Georgia Koumboulis to the Jaconos by Deed dated October 31, 2006 and recorded January 19, 2007.

19. The Title report, Schedule C, Description and Recital, states as follows:

Being the same premises which Estate of Kostantinos Koumboulis and Estate of Georgia Koumboulis, William C. Mackrides, Esq. and Constantine Economides, Esq., Co–Administrators of Estates by Deed dated 10/31/2006 and recorded 1/19/2007 in Delaware County in Volume 4008 Page 630 conveyed unto Joseph Jacono and Kathleen M. Jacono, husband and wife, in fee.

20. Plaintiff testified that she read the Title Report and recognized that the Jacono Defendants had purchased the property from the Koumboulis Estate, but proceeded with the transaction.

21. On August 10, 2007, Plaintiff closed on the property for $610,000,00, but was not present at the closing.

Trial Court Opinion, 4/6/11, at 1–4.[2]

Buyer raises four issues on appeal:

I. Whether the trial court erred in granting summary judgment in favor of Defendants on the claim of a violation of the Real Estate Disclosure Law because a material issue of fact existed as to whether the murder/suicide which occurred in the home constituted a "material defect" because it had a significant adverse impact on the value of the property?

II. Whether the trial court erred in granting summary judgment in favor of Defendants on the fraud claim because a material issue of fact existed as to whether their intentional concealment and nondisclosure of the murder/suicide led to a viable claim for fraud?

III. Whether the trial court erred in granting summary judgment in favor of Defendants on the claim of negligent misrepresentation because a material issue of fact existed as to whether Mrs. Milliken had a viable claim for negligent misrepresentation?

IV. Whether the trial court erred in granting summary judgment in favor of the Defendants on the claim of a violation of the Unfair Trade Practices and Consumer Protection Law because a material issue of fact existed as to whether Mrs. Milliken had a viable claim for common law fraud which would lead to a claim under the statute?

Buyer's brief at 4.

We begin by noting that each of Buyer's claims on appeal relies, first, upon the existence of a material defect in the property and, second, upon the failure to reveal, or concealment of, that defect, or some deceptive conduct connected to that defect. In each instance, Buyer puts forward as the offending defect, certain psychological damage to the property occasioned by the murder/suicide of Konstantinos and Georgia Koumboulis. Thus, if the murder/suicide cannot be considered a defect legally, or if the Sellers were under no legal obligation to reveal this alleged defect, there can be no liability

---

**2.** Finally, in her brief, Buyer claims that following her family moving into the house, various paranormal events have transpired.

predicated upon the failure to so inform. Today, we find that psychological damage to a property cannot be considered a material defect in the property which must be revealed by the seller to the buyer. Thus, each of Buyer's issues on appeal must fail.

We begin our analysis with our standard and scope of review where a motion for summary judgment has been granted:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.,* 52 A.3d 347, 350 (Pa.Super.2012), quoting *Daley v. A.W. Chesterton, Inc.,* —— Pa. ——, ——, 37 A.3d 1175, 1179 (2012).

Appellant argues that the murder/suicide qualifies as a material defect as that term is defined under the Real Estate Seller Disclosure Law ("RESDL"):

> "**Material defect.**" A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect. .

68 Pa.C.S.A. § 7102 (in pertinent part).

However, the RESDL actually identifies the particular classes of defect that must be revealed. In doing so the RESDL demonstrates that the Legislature did not intend that sellers be legally required to reveal something such as psychological damage from a murder/suicide. Looking at the section pertaining to those mandatory disclosures, we find:

> (a) **General rule.**—A form of property disclosure statement that satisfies the requirements of this chapter shall be promulgated by the State Real Estate Commission. Nothing in this chapter shall preclude a seller from using a form of property disclosure statement that contains additional provisions that require greater specificity or that call for the disclosure of the condition or existence of other features of the property.
>
> (b) **Contents of property disclosure statement.**—The form of property disclosure statement promulgated by the State Real Estate Commission shall call for disclosures with respect to all of the following subjects:
>
> (1) Seller's expertise in contracting, engineering, architecture or other areas related to the construction and conditions of the property and its improvements.
>
> (2) When the property was last occupied by the seller.
>
> (3) Roof.
>
> (4) Basements and crawl spaces.
>
> (5) Termites/wood destroying insects, dry rot and pests.
>
> (6) Structural problems.
>
> (7) Additions, remodeling and structural changes to the property.

(8) Water and sewage systems or service.

(9) Plumbing system.

(10) Heating and air conditioning.

(11) Electrical system.

(12) Other equipment and appliances included in the sale.

(13) Soils, drainage and boundaries.

(14) Presence of hazardous substances.

(15) Condominiums and other home-owners associations.

(16) Legal issues affecting title or that would interfere with use and enjoyment of the property.

68 Pa.C.S.A. § 7304(a) and (b).

An examination of the mandatory disclosures reveals that each deals with either the actual physical structure of the house, its components, and the condition of the curtilage (3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13), potential legal impairments attached to the property (15, 16), and hazardous substances on the property (14). A requirement that sellers of real estate reveal that a murder once occurred on the property goes to the reputation of the property and not its actual physical structure. Plainly, the Legislature did not require disclosure of psychological damage to a property. Buyer argues that if the Legislature had intended to exclude a murder/suicide as a material defect it would have done so by express language excluding psychological damage. We disagree. Rather, psychological damage is so different from the physical and legal defects listed that it is plain that the Legislature intended not to include it. Because the Legislature limited required disclosures to structural matters, legal impairments, and hazardous materials, the extension suggested by Buyer would be both unwarranted and legislative in nature. There are other problems as well.

First, how recent must the murder be that the seller must inform the buyer? What if the murder happened 100 years ago? What if numerous owners have lived in the house in the interim? In fact, the Buyer here is one buyer removed from the murder/suicide at issue. This raises another concern. This sort of psychological damage to a house will obviously decrease over time as the memory of the murder recedes from public knowledge. Requiring a seller to reveal this information may force the seller to sell the house under market value and allow the buyer to realize a windfall when the house is resold 10 years later and memories have faded. The passage of time has no similar curative effect on structural damage, legal impairments, or hazardous materials.

Second, how can a monetary value possibly be assigned to the psychological damage to a house caused by a murder? The psychological effect will vary greatly from person to person. There are persons for whom no amount of money would induce them to live in such a house, while others may not care at all, or even find it adventurous. Further, as noted, the monetary value of such a psychological defect will dissipate with the passage of time as the memory of the murder recedes.

Third, is this disclosure limited to murder, or must other crimes be revealed also? A buyer might want to know that a house has been burgled five times in the last year because that might indicate that the neighborhood is dangerous. What about crimes that did not occur on the property itself? Suppose there had been a number of shootings in the neighborhood. Further, a buyer might want to know that a child molester lived in the neighborhood.

The fact that a murder once occurred in a house falls into that category of home-buyer concerns best left to *caveat emp-*

*tor.*[3] If psychological defects must be disclosed then we are not far from requiring sellers to reveal that a next-door neighbor is loud and obnoxious, or on some days you can smell a nearby sewage plant, or that the house was built on an old Indian burial ground. Indeed, one could identify numerous psychological problems with any house. Sellers should only be required to reveal material defects with the actual physical structure of the house, with legal impairments on the property, and with hazardous materials located there. To allow consideration of possible psychological defects opens a myriad of disclosures that sellers will need to reveal, and starts a descent down a very slippery slope.

■ Moreover, an expansion of required seller disclosures from the physical to the psychological is a massive expansion in the character of disclosure. It requires the seller to warn not only of the physically quantifiable but also of utterly subjective defects. We find that such a change is one that can only reside with the Legislature. In sum, the RESDL does not require the disclosure of psychological defects such as the murder/suicide at issue here, and there was no liability under the RESDL for failing to disclose the matter. The trial court properly granted summary judgment.

■ Likewise, we find no liability under the other theories alleged in the Complaint and argued now on appeal. In order to prove fraud the following elements must be shown: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresenta-

tion; and (6) the resulting injury was proximately caused by the reliance. *Youndt v. First National Bank of Port Allegany,* 868 A.2d 539, 545 (Pa.Super.2005). Moreover,

> [i]n real estate transactions, fraud arises when a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose. Fraud is a generic term used to describe anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture.

*Id.,* quoting *Blumenstock v. Gibson,* 811 A.2d 1029, 1034 (Pa.Super.2002) (citations and quotation marks omitted), *appeal denied,* 573 Pa. 714, 828 A.2d 349 (2003).

■ Sellers cannot be found liable for fraud because they did not conceal or fail to disclose a material defect in the property. As our analysis under the RESDL has revealed, Sellers were under no legal obligation to tell Buyer about the murder/suicide. On her part, Buyer argues that the murder/suicide was material because she would not have purchased it had she been aware of the murder/suicide. Buyer also argues that the matter is material because she had expert testimony that the murder/suicide diminished the value of the property.

In support, Buyer cites to *Reed v. King,* 145 Cal.App.3d 261, 193 Cal.Rptr. 130 (1983), and *Van Camp v. Bradford,* 63 Ohio Misc.2d 245, 623 N.E.2d 731 (Ohio Ct. of Common Pleas 1993), which relies directly on *Reed. Reed* involved the sale of a house in which a woman and her four children had been murdered 10 years earlier. *Van Camp* involved the sale of a

---

**3.** Certainly, in the age of the internet the modern home buyer has a powerful tool to uncover the notorious history of a house or neighborhood.

house in which a rape had been committed within the last year, coupled with the fact that additional rapes had recently been committed in the neighborhood. In finding actionable fraud, *Reed* adopted a broad meaning of materiality:

> In general, a seller of real property has a duty to disclose: "where the seller knows of facts **materially** affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Emphasis added; Citations omitted.]"

*Reed*, 193 Cal.Rptr. at 131–132 (footnote omitted).

The problem with this analysis is one we alluded to during our discussion of the RESDL; it changes the measure of materiality from an objective to a subjective basis. Under *Reed*, not only must a seller inform a buyer about objective structural defects or objective legal impairments, but also wholly subjective problems that might have an impact on the buyer's decision.[4] This would open the same slippery slope we addressed earlier, requiring sellers to recite a litany of potential psychological defects. We decline to adopt the view of materiality championed by *Reed*.

█ While the murder/suicide may have been subjectively material to Buyer's decision, we hold that under common law fraud a seller of real estate is only liable for failing to reveal objective material defects. Psychological damage to real estate does not constitute a defect that the law is presently prepared to recognize as material. No action for fraud could be maintained on this basis and the trial court properly granted summary judgment.

█ Next, Buyer raised a claim of negligent misrepresentation.

Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. *Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.*

*Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1252 (Pa.Super.2002), (emphasis added) quoting *Kramer v. Dunn*, 749 A.2d 984, 991 (Pa.Super.2000) (citations and quotation omitted).

█ On appeal, Buyer fails to identify any duty owed by Sellers to Buyer, nor does Buyer describe the legal basis out of which the duty arises. The Complaint identifies the duty as one to disclose the material defect of the murder/suicide. However, as our prior discussion has observed, Sellers have no duty to disclose purely psychological defects and, therefore, no obligation. The trial court properly granted summary judgment as to this count also.

Finally, Buyer argues that Sellers are liable pursuant to the "catch-all" provision of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"):

---

4. *Reed* has been criticized on this very basis. *See* 45 U.Pitt.L.Rev. 877, 889–895.

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201–2(4)(xxi).

Both the trial court and Buyer cite *Skurnowicz v. Lucci*, 798 A.2d 788 (Pa.Super.2002) for the proposition that "[i]n order to establish a violation of this catchall provision, 'a plaintiff must prove all of the elements of common-law fraud.'" *Skurnowicz*, 798 A.2d at 794, quoting, in part, *Sewak v. Lockhart*, 699 A.2d 755, 760 (Pa.Super.1997). Recently, however, a panel of this court recognized that this aspect of the catch-all provision had been superseded by statute. In *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa.Super.2012), the panel concluded that a 1996 (effective February 2, 1997) amendment to the catch-all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct. *Id.* at 150–153. The panel acknowledged the existence of post-amendment cases that continued to uphold the prior fraud requirement, but dismissed them on the basis that those cases relied upon pre-amendment decisions.

■ Nonetheless, even with this reduced burden, we find that Buyer cannot make out a claim under the catch-all provision. Sellers simply did not engage in any deceptive conduct. Sellers merely declined to inform Buyer about a factor of which they were under no obligation to disclose. Buyer had no supportable cause of action under the UTPCPL and the court properly granted summary judgment.

Accordingly, having found that the occurrence of a murder/suicide on a property does not constitute a material defect to real estate such that a seller must disclose that fact under theories of liability predicated on the RESDL, fraud, negligent misrepresentation, and the UTPCPL, we find that the trial court properly entered summary judgment.

Order granting summary judgment affirmed.

BENDER, J. files a Dissenting Opinion which is joined by MUNDY and WECHT, JJ.

DISSENTING OPINION BY BENDER, J.:

I respectfully dissent. The single certainty that permeates every aspect of this case is that Janet Milliken, who has now suffered a six-figure economic loss (and untold aggravation), was destined to discern the occurrence of a murder/suicide in her new home either before consummating her purchase or—as fate would have it—afterward. I am not the first to recognize that "truth will come to light; murder cannot be hid long." *Reed v. King*, 145 Cal.App.3d 261, 193 Cal.Rptr. 130, 131–32 (1983)(quoting SHAKESPEARE, MERCHANT OF VENICE, Act I, Scene II). Nevertheless, the financial penalty Mrs. Milliken has suffered was entirely avoidable had the sellers from whom she bought her home merely exercised a little more integrity and a little less greed. The Majority's ruling, which deprives Milliken of any legal remedy, rewards those sellers and short-circuits the legislative intent of the Real Estate Seller Disclosure Law (RESDL), 68 Pa.C.S. §§ 7301–7315. Not surprisingly, it also truncates the ability of homebuyers across this Commonwealth to avoid potentially catastrophic losses in purchasing a home. The RESDL—on its face—does not countenance such an untoward result, notwithstanding the Majority's speculation about unproven consequences in scenarios not before us. In my opinion, the circumstances of record *in this case*, considered

through the prism of the RESDL and the causes of action Mrs. Milliken avers, raise questions of fact that must be resolved at trial.

I acknowledge, as does the Majority, that the RESDL requires disclosure to the buyer of "any material defects with the property known to the seller[.]" 68 Pa. C.S. § 7303. Nevertheless, the Majority attempts to limit the circumstances subject to disclosure as "material defects" to the conditions itemized in RESDL section 7304, which directs the State Real Estate Commission to promulgate "a disclosure statement that satisfies the requirements of this chapter." 68 Pa.C.S. § 7304(a). The statute enumerates, in subsection (b), specific conditions or forms of impairment to be included in the disclosure statement. See id. at § 7304(b). Significantly, however, language limiting the necessity of disclosure to the enumerated items or circumstances is conspicuously absent—and with good reason; a companion provision of the RESDL directs that such a specification *shall not be deemed conclusive of the disclosure obligation under other provisions of law.* Section 7313 elucidates the point in the clearest parlance possible:

**§ 7313. Specification of items for disclosure no limitation on other disclosure obligations**

**(a) General rule.**—The specification of items for disclosure in this chapter or in any form of property disclosure statement promulgated by the State Real Estate Commission *does not limit or abridge any obligation for disclosure created by any other provision of law or that may exist in order to avoid fraud, misrepresentation or deceit in the transaction.*

68 Pa.C.S. § 7313(a) (emphasis added).

Inexplicably, the Majority fails even to acknowledge section 7313, much less reconcile its obvious effect on the restrictive rule the Majority Opinion devines from the "specification of items" in section 7304(b). Unlike the Majority, I find the language of section 7313 dispositive in its apparent direction that items specified in section 7304(b) *do not* delimit "any material defects with the property known to the seller," *id.* at § 7303, and *do not* circumscribe grounds for potential liability for non-disclosure. Indeed, section 7304 itself allows that "[n]othing in this chapter shall preclude a seller from using a form of property disclosure statement that contains additional provisions that require greater specificity or that call for the disclosure of the condition or existence of other features of the property." *Id.* at § 7304(a). Accordingly, *nothing in the RESDL as a whole* prevents disclosure of circumstances not specified in section 7304(b) *or limits* potential liability for non-disclosure to the circumstances that section does specify. *See* 68 Pa.C.S. § 7313.

The more comprehensive scope of liability attendant on these two sections of the RESDL is, in my estimation, precisely what the legislature contemplated in the adoption of that Act. Indeed, even without resort to sections 7304(a) or 7313, the Residential Real Estate Transfers Law (RRETL), 68 Pa.C.S. §§ 7101–7103, which provides meaning and context for the RESDL, renders the legislature's understanding of the term, "material defect" unmistakable. Contrary to the Majority's assertion that the RESDL requires disclosure of only structural defects on the property, legal impairments, or hazardous substances, RRETL section 7102 reveals that a "material defect" is "[a] problem with a residential real property or any portion of it *that would have a significant adverse impact on the value of the property* or that involves an unreasonable risk to people on the property." 68 Pa.C.S. § 7102.

In this case, the adverse impact of the murder/ suicide on the value of Milliken's home is documented in the reports of two expert real estate appraisers, one of whom opined that the attendant stigma reduced the value of the property by ten to fifteen percent of its $610,000 sale price, and the other of whom attested that the value of the home did not exceed $525,000. To the extent that a reduction of almost $100,000 in value can be deemed a "significant adverse impact on the value of the property," the RRETL, considered in conjunction with RESDL, *mandates* that the cause of the stigma be disclosed. Thus, whereas the Majority would consign the stigma of murder/suicide to the ethereal realm of "psychological damage," Majority Op. at 139, the statute recognizes it for what it is—documented economic loss—and a "material defect" that must be disclosed.

On this point at least, mine is not a lone voice in the wilderness. Under substantially identical circumstances, the California Court of Appeals imposed a duty of disclosure on the seller and upheld the right of the buyer to recover where the undisclosed fact "materially affect[s] the value or desirability of the property." *See Reed*, 193 Cal.Rptr. at 131–32. As a measure of whether undisclosed information "is of sufficient materiality to affect the value or desirability of the property," *see id.* at 132, the Court considered three elements: "the gravity of the harm inflicted by nondisclosure; the fairness of imposing a duty of discovery on the buyer as an alternative to compelling disclosure, and its impact on the stability of contracts if rescission is permitted," *see id.* Balancing those factors, the Court found that commission of a multiple murder on the property (albeit ten years prior to the disputed sale) *does* vest the seller with a duty of disclosure. *See id.*

I find these same elements probative of the extent to which the murder/suicide in this case amounts to a "material defect," *i.e.*, "[a] problem with a residential real property ... that would have a significant adverse impact on the value of the property." Significantly, the Court in *Reed* first acknowledged the same reservations advanced by the Majority in this case.

> The paramount argument against [the disclosure of the multiple murder] is it permits the camel's nose of unrestrained irrationality admission to the tent. If such an "irrational" consideration is permitted as a basis of rescission the stability of all conveyances will be seriously undermined. Any fact that might disquiet the enjoyment of some segment of the buying public may be seized upon by a disgruntled purchaser to void a bargain.

*Id.* at 132–133. The Court then dismantled those claims, recognizing that the uniqueness of the scenario both obviates the potential for abuse and vitiates the suggestion that *caveat emptor* should constrain the buyer to inquire after a home's history of criminal mortality:

> In our view, keeping this genie [i.e., the potential for abuse] in the bottle is not as difficult a task as these arguments assume. We do not view a decision allowing Reed to survive a demurrer in these unusual circumstances as endorsing the materiality of facts predicating peripheral, insubstantial, or fancied harms.

> The murder of innocents is highly unusual in its potential for so disturbing buyers they may be unable to reside in a home where it has occurred. This fact may foreseeably deprive a buyer of the intended use of the purchase. Murder is not such a common occurrence that *buyers* should be charged with anticipating and discovering this disquieting pos-

sibility. Accordingly, the fact is not one for which a duty of inquiry and discovery can sensibly be imposed upon the buyer.

*Id.* at 133.

The Court then recognized as well that, contrary to objections that damage to the public perception of a property, *i.e.,* "psychological damage," *see* Majority Op. at 139, is not an appropriate subject of compensation, damage to reputation is in fact cognizable as economic loss:

> [The buyer] alleges the fact of the murders has a quantifiable effect on the market value of the premises. We cannot say this allegation is inherently wrong and, in the pleading posture of the case, we assume it to be true. If information known or accessible only to the seller has a significant and measureable effect on market value and, as is alleged here, the seller is aware of this effect, we see no principled basis for making the duty to disclose turn upon the character of the information. *Physical usefulness is not and never has been the sole criterion of valuation.* Stamp collections and gold speculation would be insane activities if utilitarian considerations were the sole measure of value.
>
> Reputation and history can have a significant effect on the value of realty. "George Washington slept here" is worth something, however physically inconsequential that consideration may be. Ill-repute or "bad will" conversely may depress the value of property.

*Id.* at 132–33 (citation and footnote omitted, emphasis added).[1]

Finally, the Court left no doubt that the economic loss attendant upon a failure to disclose can be recoverable based upon quantified proof of the loss:

> Whether [the buyer] will be able to prove her allegation [that] the decade-old multiple murder has a significant effect on market value we cannot determine. If she is able to do so by competent evidence she is entitled to a favorable ruling on the issues of materiality and duty to disclose. Her demonstration of objective tangible harm would still the concern that permitting her to go forward will open the floodgates to rescission on subjective and idiosyncratic grounds.

*Id.* at 133–34 (footnote omitted).

Of course, the Court's decision in *Reed* does not bind us. Nevertheless, its analysis offers a valuable perspective that should cause the Majority pause in its insistence that pragmatic considerations militate against the conclusion that damage to the reputation of a property poses a quantifiable economic loss. As the Court in *Reed* has amply demonstrated, the truth is quite the contrary. Moreover, to the extent that the cause of loss can be proven by expert testimony, it imposes "significant adverse impact on the value of the property," and must be recognized as a "material defect" under the RESDL. Pursuant to the language of RESDL section 7303, disclosure of such defects by the seller should be deemed mandatory, and a seller who fails in this regard should answer for his conduct in damages.

---

1. The Majority's potential response to this reasoning, that the criminal history of a property is now discoverable with the aid of the internet, *see* Majority Op. at 139–40, does not bear scrutiny. Various web-based services, *e.g.* Reputation.com, allow users to procure the professional "scrubbing" of internet search results to avoid disclosure of facts not deemed "appropriate" for public consumption. To the extent that such services are available to "protect" one's personal reputation, I see no reason why they might not also be employed to prevent undesirable disclosures about the history of real property.

Consistent with this rationale, I would vacate the trial court's award of summary judgment and remand this matter for trial. Inasmuch as the Majority declines this course, I must respectfully dissent.