J-S56016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EARL CALVIN HANDFIELD, II | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM E. HOWELL, III, ESQ. | : | No. 1479 EDA 2019 |
| DAVID N. VAN DER GOES PHD ALBU | : | |
| QUANT, LLC | : | |

Appeal from the Order Entered April 25, 2019
In the Court of Common Pleas of Chester County Civil Division at No(s):
2019-03958

BEFORE:   PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 11, 2020**

Appellant Earl Calvin Handfield, II, appeals *pro se* from the orders dismissing his complaint as frivolous under Pa.R.C.P. 240(j) and denying his application for leave to proceed *in forma pauperis*.  Appellant contends that his complaint stated viable claims against Appellees William E. Howell, III, Esq. (Attorney Howell), David N. van der Goes (Dr. van der Goes), and Albu Quant, LLC.  We affirm.

We state the background of this matter based on the allegations in Appellant's complaint.  In 2009, a jury found Appellant guilty of first-degree murder for killing Corey Jennings (the decedent), and the trial court sentenced Appellant to life imprisonment (the criminal matter).  Appellant's Compl., 4/19/19, at ¶ 8.  The Pennsylvania Crime Victims Compensation Fund (CVC) paid approximately $12,361 to the decedent's children.  *Id.* at ¶ 11.

In 2016, the decedent's daughter, who was a minor when Appellant killed the decedent, commenced a wrongful death action against Appellant after she reached the age of majority. *Id.* at ¶ 12. Attorney Howell represented the decedent's daughter in the wrongful death action. *Id.* at ¶ 14. Dr. van der Goes, who owned Albu Quant, LLC, prepared a report stating that the decedent's death caused his children to lose $361,217.80, which represented the decedent's projected income over his projected "work life." *Id.* at ¶¶ 4-5, 20, 76 & Ex. 14 (Albu Quant report, 7/27/17). Appellant represented himself in the wrongful death action, and he received a copy of the Albu Quant report. *Id.* at ¶¶ 15, 20.

The wrongful death action proceeded to a jury trial in August 2017. *Id.* at ¶ 24. At trial, Dr. van der Goes testified against Appellant as a damages expert. *Id.* According to Appellant, "on August 17[, 2017,] the jury rul[ed] in [Appellant's] favor finding that he was not liable to pay any money in damages. The jury's verdict stated that [Appellant] owed zero dollars for every count that was charged." *Id.* at ¶ 25.

On April 19, 2019, Appellant filed the instant *pro se* complaint naming Albu Quant, LLC, Dr. van Der Goes, and Attorney Howell as defendants. In his complaint, Appellant raised the following claims: Count 1—wrongful use of civil proceedings[1] against Attorney Howell; Count 2—negligent misrepresentation against Albu Quant, LLC; Count 3—intentional

---

[1] *See* 42 Pa.C.S. §§ 8351-8354 (Dragonetti Act).

misrepresentation against Albu Quant, LLC; Count 4—abuse of process against Attorney Howell; and Count 5—professional negligence against Dr. van der Goes. Appellant asserted that the defendants were not entitled to immunity. *Id.* at ¶¶ 26-28.

As to damages, Appellant asserted that he suffered emotional distress related to the wrongful death action, as well as "sticker shock" from the estimated damages in the Albu Quant report. *Id.* at ¶¶ 49, 114. Appellant stated that his distress resulted in physical symptoms, including bloody discharges from his urethra, which placed him in additional fear of having a more severe condition such as cancer. *Id.* at ¶¶ 60-63. Additionally, Appellant claimed that he suffered a physical injury when, while exercising in the gym, he became distracted by the wrongful death action and dropped a weight on his head. *Id.* at ¶ 51. Appellant also claimed that his distress resulted in his failure to perform on a songwriting contract for $18,000. *Id.* at ¶¶ 52-56. Appellant attached an application for leave to proceed *in forma pauperis* to his complaint.

On April 25, 2019, the trial court dismissed Appellant's complaint based on Pa.R.C.P. 240(j). The trial court reasoned:

> [Appellant's] cause of action herein is frivolous despite the fact that the jury awarded no damages in the [wrongful death] action. The fact that no damages were awarded could be as a result of lack of proof or the jury's recognition that awarding damages against [Appellant] was fruitless because he is going to spend the rest of his life in prison with no ability to repay any awarded damages. In any event, [Appellant's] belief that he is entitled to damages as a result of the discomfort resulting from being sued

by the family of the decedent that he murdered is frivolous and has no bases in law or fact.

Order 4/25/19, at n.1. That same day, the trial court entered a separate order denying Appellant's application for leave to proceed *in forma pauperis*.

Appellant timely filed a notice of appeal and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement.[2] The trial court filed a Rule 1925(a) opinion restating its previous conclusion that Appellant's action was frivolous. Trial Ct. Op., 7/9/19, at 2. The trial court described Appellant's filing of his complaint as an attempt "to re-victimize the [decedent's] family." ***Id.***

In his *pro se* brief, Appellant presents seven questions, which we have reordered as follows:

[1]. Did the [trial] court deny [Appellant] access to the court by denying [Appellant's] complaint as frivolous without adjudicating the merits of the professional negligence claim against [Dr. van der Goes], where the complaint established that [Dr. van der Goes] failed to investigate and sufficiently formulate an analysis of the [decedent's] economic value, contributing to [Appellant's] harm suffered through reliance on untruthful information?

[2]. Did the [trial] court deny [Appellant] access to the court by denying [Appellant's] complaint as frivolous without adjudicating the merits of [Appellant's] negligent misrepresentation claim against [Albu Quant, LLC,] whose allegation that Appellant owed $361,217.00 lacked support by facts or by necessary data to make [Appellant] legally liable, thus contributing to [Appellant's] harm suffered through reliance on untruthful information?

[3]. Did the [trial] court deny [Appellant] access to the court by denying [Appellant's] complaint as frivolous without adjudicating

---

[2] Appellant filed a separate application for leave to proceed *in forma pauperis* on appeal. The trial court granted that request.

the merits of the intentional misrepresentation claim against [Albu Quant, LLC,] when the complaint establishes that [Albu Quant, LLC,] deliberately and falsely stated that it formulated its analysis of the [decedent's] value based on "documents [of the decedent's] occupation and work history", thus contributing to [Appellant's] harm-suffered through reliance on untruthful information?

[4]. Did the [trial] court violate due process and misapply [Appellant's] Dragonetti Act claim that contained arguable merit, which the court denied as "frivolous", where:

> (a) the underlying proceedings terminated in [Appellant's] favor (an element of the act); and

> (b) the claim is supported by sworn affidavits, by medical records and by Pennsylvania law?

[5]. Did the [trial] court deny [Appellant] access to the court by denying [Appellant's] complaint as frivolous without adjudicating the merits of the abuse of process claim, supported by sworn affidavits and by facts that:

> (a) [Attorney Howell] acted with an ulterior motive by using a legal process (wrongful death action) as a tactical weapon to compel a payment that was unauthorized by the wrongful death/survival act; and

> (b) [The decedent's daughter] admitted that she neither initiated nor wished to bring [the wrongful death] action against [Appellant]?

[6.] Did the [trial] court violate due process by denying [Appellant's] entire civil complaint as "frivolous" without adjudicating the merits of each count and without assessing the damages presented, which are supported by sworn affidavits, by medical records, by court documents and by Pennsylvania law?

[7]. Did the [trial] court deny [Appellant] access to the court by denying [Appellant] leave to proceed *in forma pauperis* without regarding [Appellant's] indigent status, demonstrated in the *in forma pauperis* application, by basing its ruling solely on speculative facts relating to the actual complaint?

Appellant's Brief at 5-6.

Appellant's appeal challenges the trial court's decision to dismiss his actions against Albu Quant, LLC, Dr. van der Goes, and Attorney Howell under Pa.R.C.P. 240(j). Appellant argues he stated non-frivolous claims against Albu Quant, LLC, and Dr. van der Goes for negligence, negligent misrepresentation, and intentional misrepresentation and against Attorney Howell for wrongful use of civil proceedings and abuse of process. Appellant also contends that the trial court violated his due process rights by summarily dismissing his complaint and denying his petition to proceed *in forma pauperis*.

Before addressing Appellant's arguments, we note that Pa.R.C.P. 240 states:

> (b) A party who is without financial resources to pay the costs of litigation is entitled to proceed *in forma pauperis*.
>
>             \*     \*     \*
>
> (j)(1) If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed *in forma pauperis*, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.
>
> > Note: A frivolous action or proceeding has been defined as one that "lacks an arguable basis either in law or in fact." ***Neitzke v. Williams***, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Pa.R.C.P. No. 240(b), (j) & note.

"Our review of a decision dismissing an action pursuant to Pa.R.C.P. 240(j) is limited to a determination of whether the plaintiff's constitutional rights have been violated and whether the trial court abused its discretion or

committed an error of law." ***Ocasio v. Prison Health Servs.***, 979 A.2d 352, 354 (Pa. Super. 2009) (citations omitted).  A litigant seeking leave to proceed *in forma pauperis* bears the responsibility of presenting a valid cause of action. ***Conover v. Mikosky***, 609 A.2d 558, 560 (Pa. Super. 1992).  A complaint is frivolous "if, on its face, it does not set forth a valid cause of action." ***See Ocasio***, 979 A.2d at 354 (citation omitted).  Moreover, Rule 240(j) requires a court to consider whether the underlying action is frivolous before acting on the petition to proceed *in forma pauperis*. ***Id.*** at 355.

## Negligence against Dr. van der Goes

Appellant asserted in his complaint that Dr. van der Goes was negligent for failing to properly investigate and analyze damages in the wrongful death action.  Appellant's Compl. at ¶¶ 139, 144.  Appellant alleged that Dr. van der Goes "did not conduct any investigation at all regarding the truth or proof of [the decedent's] earnings or losses of finances as any professional in [Dr. van der Goes'] field would have done." ***Id.*** at ¶ 145.  Specifically, Appellant claimed that Dr. van der Goes failed to base his expert opinion on documentary evidence such as tax filings, affidavits from the decedent's employers, or copies of pay stubs. ***Id.*** at ¶¶ 110, 156.  According to Appellant, Dr. van der Goes recklessly estimated damages based on hearsay reports from the decedent's family and Attorney Howell, which indicated that the decedent worked as a general laborer, who did "things like hanging drywall." ***Id.*** at ¶¶ 153-54.  Appellant asserted that Dr. van der Goes knew that the decedent

had a history of incarceration and drug use, but failed to offset his damages estimate based on those factors. *Id.* at ¶¶ 150-52.

On appeal, Appellant contends that his complaint contained sufficient allegations to state a viable claim of negligence against Dr. van der Goes. Appellant's Brief 23-30. In particular, Appellant asserts that he established that Dr. van der Goes owed him "a traditional duty of care" under ***LLMD of Michigan, Inc. v. Jackson-Cross Co.***, 740 A.2d 186 (Pa. 1999), as well as ***Bilt-Rite Contractors, Inc. v. The Architectural Studio***, 866 A.2d 270 (Pa. 2005), and the Restatement (Second) of Torts § 552. *Id.* at 30.

The following principles are relevant to our review. A plaintiff seeking relief based on a claim of negligence must show:

> [(1)] A duty or obligation recognized by law.
>
> [(2)] A breach of the duty.
>
> [(3)] Causal connection between the actor's breach of the duty and the resulting injury.
>
> [(4)] Actual loss or damage suffered by complainant.

***Lux v. Gerald E. Ort Trucking, Inc.***, 887 A.2d 1281, 1286 (Pa. Super. 2005) (citation omitted). "To establish a breach of duty in a professional negligence action, a plaintiff must show that the defendant's conduct fell below the relevant standard of care applicable to the rendition of the professional services at issue." ***Zokaites Contracting Inc. v. Trant Corp.***, 968 A.2d 1282, 1287 (Pa. Super. 2009) (citation omitted).

As to the existence of a duty, our Supreme Court has explained:

> The determination whether to impose affirmative common-law duties as a predicate to civil liability is a matter of law; accordingly, our review is plenary. We have characterized the duty inquiry as the primary inquiry in negligence. To assist us in identifying a previously unrecognized duty, we rely upon five factors: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

**Walters v. UPMC Presbyterian Shadyside**, 187 A.3d 214, 222 (Pa. 2018) (citations and alterations omitted). "[T]he legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society." **Lindstrom v. City of Corry**, 763 A.2d 394, 397 (Pa. 2000) (citation omitted).

Instantly, as noted above, Appellant cites **LLMD of Michigan**, **Bilt-Rite**, and the Restatement (Second) of Torts § 552 in support of his argument that Dr. van der Goes owed him a duty of care. However, Appellant's reliance on these authorities is misplaced.

Initially, we note that Pennsylvania courts have held that there is no civil cause of action based on testimony given during a judicial proceeding, even if the testimony was false. **See Ginsburg v. Halpern**, 118 A.2d 201, 202 (Pa. 1955) (*per curiam*). Under the doctrine of witness immunity, "private witnesses, as well as counsel, are absolutely immune from damages liability for testimony, albeit false, given or used in judicial proceedings" such that the false statements would not be actionable. **Pelagatti v. Cohen**, 536 A.2d 1337, 1342 (Pa. Super. 1987) (citations omitted).

In **LLMD of Michigan**, our Supreme Court concluded that witness immunity did not bar a plaintiff's negligence action against its own expert. **LLMD of Michigan**, 740 A.2d at 188. In that case, the plaintiff retained the expert in a prior breach of contract action that the plaintiff filed against a financing company. **Id.** at 186-87. The expert estimated that plaintiff suffered $6 million in lost profits and testified to that estimate at trial. **Id.** at 187. On cross-examination, however, the expert conceded the damages estimate was wrong due to a mathematical error and was not able to correct the error at trial. **Id.** The financing company moved to strike the expert's testimony, which the trial court granted, and the plaintiff eventually settled the breach of contract action for $750,000. **Id.**

The plaintiff in **LLMD of Michigan** thereafter sued its expert for breach of contract and professional negligence. **Id.** The trial court granted the expert's summary judgment motion and dismissed the case. **Id.** at 188. On appeal, this Court affirmed the trial court, concluding that witness immunity barred the plaintiff's action against the expert. **Id.**

Our Supreme Court reversed this Court's decision. **Id.** at 191. Initially, the **LLMD of Michigan** Court noted that witness immunity stands on the policy of "ensuring that the path to truth is unobstructed and the judicial process is protected, by fostering an atmosphere where the expert witness will be forthright and candid in stating his or her opinion." **Id.** However, in concluding that witness immunity did not bar the plaintiff's action against its expert, the Court reasoned that those purposes would not be "advanced by

immunizing an expert witness from his or her negligence in formulating that opinion." *Id.* To the contrary, the Court stated that "[t]he judicial process will be enhanced only by requiring that an expert witness render services to the degree of care, skill and proficiency commonly exercised by the ordinarily skillful, careful and prudent members of their profession." *Id.*

We acknowledge that *LLMD of Michigan* stands for the proposition that witness immunity will not bar an action for negligence or breach of contract against an expert witness. However, *LLMD of Michigan* involved the application of witness immunity and did not expressly consider the duty owed by an expert. *See id.* Moreover, the plaintiff in *LLMD of Michigan* brought the negligence claim against a "friendly" expert, who the plaintiff retained in prior litigation. *See id.* at 188. Here, Appellant attempts to impose a duty on an adverse expert. Accordingly, we conclude that *LLMD of Michigan* does not support imposing a duty on Dr. van der Goes as to Appellant.[3]

In *Bilt-Rite*, our Supreme Court expressly adopted Section 552 of the Restatement (Second) of Torts, which discusses liability for information negligently supplied for the guidance of others. *See* Restatement (Second) of Torts § 552. In *Bilt-Rite*, a school district contracted with an architect to

---

[3] We add that the distinctions between the instant case and *LLMD of Michigan* support a conclusion that witness immunity barred all of Appellant's claims against Albu Quant and Dr. van der Goes. However, immunity from suit is an affirmative defense that should generally be raised as new matter. *See* Pa.R.C.P. 1030(a); *Pollina v. Dishong*, 98 A.3d 613, 617 n.3 (Pa. Super. 2014). Moreover, the trial court in this case did not discuss the witness immunity doctrine as a basis for dismissing Appellant's complaint.

prepare designs and plans for the construction of a school building and the preparation of bids from contractors. *Bilt-Rite*, 866 A.2d at 272. The plaintiff, a building contractor, submitted the winning bid based on the architect's plans. *Id.* However, when the plaintiff began construction, it discovered that special construction methods were required that increased the cost of the project. *Id.* The plaintiff then sued the architect for negligent misrepresentation for the plans it developed for the school district. *Id.*

In adopting Section 552 of the Second Restatement of Torts, the *Bilt-Rite* Court observed:

> Section 552 sets forth the parameters of a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows that the information will be used by others in the course of their own business activities. The tort is narrowly tailored, as it applies only to those businesses which provide services and/or information that they know will be relied upon by third parties in their business endeavors, and it includes a foreseeability requirement, thereby reasonably restricting the class of potential plaintiffs.

*Id.* at 285-86. The Court emphasized that the liability of an expert who supplies information was not "radical or revolutionary," but reflected "modern business realities." *Id.* at 286.

Although *Bilt-Rite* holds that the lack of privity alone will not defeat a claim that an expert owes a duty of care to a third party, the realities of litigation do not support an opposing party's claim of reasonable reliance on the opinions of an adverse expert. Furthermore, it is foreseeable that an opposing party would challenge rather than rely on an adverse expert's

opinion, as Appellant did in the wrongful death action. Accordingly, we discern no merit to Appellant's contention that **Bilt-Rite** and Section 552 of the Second Restatement of Torts establish a duty of care as between Dr. van der Goes and Appellant.

To the extent Appellant seeks to create a new duty between an expert and an opposing party, we find the policies of extending witness immunity instructive. As our Supreme Court noted:

> A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. Even within the constraints of the witness' oath there may be various ways to give an account or to state an opinion. These alternatives may be more or less detailed and may differ in emphasis and certainty. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. But the truthfinding process is better served if the witness' testimony is submitted to "the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies."

**LLMD of Michigan**, 740 A.2d at 189 (quoting **Briscoe v. LaHue**, 460 U.S. 325 (1983)).

Here, Dr. van der Goes prepared an expert opinion regarding damages in the wrongful death action against Appellant. Imposing such a duty on an expert could induce the forms of self-censorship described by the Court in **LLMD of Michigan**. **See id.** at 189. Accordingly, the judicial process is better

- 13 -

served by subjecting an adverse expert's opinion to the rigors of cross-examination and scrutiny in the normal course of litigation. The imposition of a new duty of care on the adverse expert is contrary to the realities of litigation. *See id.*

Accordingly, our review reveals no error in the trial court's conclusion that Appellant's negligence claim was frivolous because Appellant failed to establish an actionable duty of care. *See Ocasio*, 979 A.2d at 354; *cf. Lindstrom*, 763 A.2d at 397. Therefore, Appellant's first issue merits no relief.

### Negligent Misrepresentation against Albu Quant, LLC

Appellant alleged in his complaint that Dr. van der Goes owned Albu Quant, LLC, and that Dr. van der Goes authored the Albu Quant report estimating damages in the wrongful death action at $361,217.80. Appellant's Compl. at ¶ 76 & Ex. 14. Appellant's claims that "[Albu Quant, LLC,] had a duty to investigate and base its findings on credible and reliable facts, which it did not." *Id.* at ¶ 91. On appeal, Appellant contends that Albu Quant, LLC, also owed him duty of care under the Restatement (Second) of Torts § 552. Appellant's Brief at 30.

For a claim of negligent misrepresentation, a plaintiff must state there was:

(1) a misrepresentation of a material fact;

(2) made under circumstances in which the misrepresenter ought to have known its falsity;

- 14 -

(3) with an intent to induce another to act on it; and

(4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

*Milliken v. Jacono*, 60 A.3d 133, 141 (Pa. Super. 2012) (citation omitted). "[L]ike any action in negligence, there must be an existence of a duty owed by one party to another" to sustain a negligent misrepresentation claim. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

Here, just as Appellant failed to establish that Dr. van der Goes owed him a duty of care, Appellant cannot establish that Albu Quant, LLC, owed him a duty to undertake a reasonable investigation. Therefore, Appellant's claim that he had an actionable cause of action against Albu Quant, LLC, for negligent misrepresentation fails. *See Ocasio*, 979 A.2d at 354; *cf. Bortz*, 729 A.2d at 561.

### Intentional Misrepresentation against Albu Quant, LLC

Appellant's claim of intentional misrepresentation against Albu Quant, LLC, concerns Albu Quant, LLC's representation that it reviewed documents related to the decedent. Appellant's Compl. at ¶¶ 103-11. Appellant alleged that this was false because Dr. van der Goes admitted at trial that he did not review documents regarding the decedent's past income. *Id.* at ¶ 107. Appellant asserts that "[Albu Quant, LLC,] intentionally misled [him] to believe that the $361,217.80 [in wrongful death damages] encompassed all factors relevant to [the decedent's] social and economic value." *Id.* at ¶ 111. On appeal, Appellant restates the allegations set forth in his complaint and

- 15 -

contends that the trial court erred in finding his claim frivolous. Appellant's Brief at 31-32.

For a claim of intentional misrepresentation, a plaintiff must state there was:

(1) [a] representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and,

(6) the resulting injury was proximately caused by the reliance.

*Bortz*, 729 A.2d at 560 (citations omitted).

By way of further background, we note that an action for wrongful death "may be brought . . . to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." *See* 42 Pa.C.S. § 8301(a). The damages are intended "to compensate the decedent's survivors for the pecuniary losses they have sustained as a result of the decedent's death. This includes the value of the services the victim would have rendered to his family if he had lived." *Amato v. Bell & Gossett*, 116 A.3d 607, 625 (Pa. Super. 2015) (citation omitted). As this Court noted, "[t]he primary purpose of expert testimony is not to assist one party or another in winning the case but to assist the trier of facts in understanding complicated matters." *Panitz v. Behrend*, 632 A.2d 562, 565 (Pa. Super.

1995). Nevertheless, "a jury may reject any evidence offered, even if uncontroverted; a jury is not obliged to believe or disbelieve any evidence presented at trial, including an expert's opinion." *See Carroll v. Avallone*, 939 A.2d 872, 875 (Pa. 2007).

Instantly, the record showed that the Albu Quant report stated that Albu Quant, LLC, "reviewed documents pertaining to the fate [of the decedent], and his socio-economic status, age when he died, race, occupation and past history of incarceration." Albu Quant Report at 1. The Albu Quant report estimated the decedent's death resulted in a loss of income of $143,558 between 2005 and 2017, and a loss of $361,271 if the decedent survived to sixty-five years old. *Id.* at 2. Albu Quant, LLC, stated it based his findings on government statistics regarding income and estimated employment rates. *Id.* at 1.

The record further established that Albu Quant, LLC, provided a means for the jury to measure the loss to the decedent's family based on economic data relevant to the decedent's socio-economic background. Apparently, the jury did not credit the report. However, the jury's finding of no damages in and of itself did not establish that Albu Quant, LLC, intentionally misrepresented the possible damages in the wrongful death action. *See Carroll*, 939 A.2d at 875. Accordingly, we find no basis to disturb the trial court's ruling that Appellant's claim of intentional misrepresentation against Albu Quant, LLC, was frivolous. *See Ocasio*, 979 A.2d at 354.

**Wrongful Use of Civil Proceedings against Attorney Howell**

Appellant's wrongful use of civil proceedings claim against Attorney Howell emphasized that the wrongful death action ended in his favor. Appellant's Compl. at ¶ 25. Appellant alleged that after the wrongful death action was filed against him, he asked Attorney Howell "who came up with the idea" to commence the civil action. *Id.* at ¶ 33. According to Appellant, Attorney Howell responded that the CVC "wanted to collect the funds it paid out to [the decedent's] children" in the criminal matter. *Id.* Appellant noted that the decedent's daughter later admitted that it was not her idea to sue Appellant. *Id.* at ¶ 34.

Based on these allegations, Appellant characterized the wrongful death action as an unlawful attempt to collect or seek reimbursement for restitution for "someone other than the actual victim." *Id.* at ¶ 37. Appellant asserted that Attorney Howell

> was grossly negligent for the cumulative factors of: (a) pursuing a suit even though [Appellant] was not liable to pay back the CVC; (b) causing an expert witness to negligently conduct a financial investigation of [the decedent's] worth and (c) knowing that the lawsuit was not truly at the behest of [the decedent's daughter].

*Id.* at ¶ 42. In support, Appellant noted that under the restitution statute, 18 Pa.C.S. § 1106, the trial court could have ordered him to reimburse the CVC, but did not do so in the criminal matter. *Id.* at ¶¶ 40-41.

On appeal, Appellant insists that the CVC encouraged the decedent's family to file the wrongful death action against him to recover the payments it made in the criminal matter. Appellant's Brief at 17. Appellant maintains

that the proper process for the CVC to seek reimbursement was through a sentence of restitution. Appellant argues that Attorney Howell was grossly negligent for commencing the wrongful death action at the suggestion of CVC. *Id.* at 19-20. Additionally, Appellant contends that Attorney Howell was grossly negligent for procuring or relying on improper damages evidence provided by Albu Quant, LLC , and Dr. van der Goes. *Id.*

The Dragonetti Act defines a claim for wrongful use of civil proceedings as follows:

> **(a) Elements of action.—**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> > (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
> >
> > (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a). Section 8354 establishes that the plaintiff bringing a wrongful use of civil proceeding claim bears the burden of establishing:

> (1) The defendant has procured, initiated or continued the civil proceedings against him.
>
> (2) The proceedings were terminated in his favor.
>
> (3) The defendant did not have probable cause for his action.
>
> (4) The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.

(5) The plaintiff has suffered damages as set forth in section 8353 (relating to damages).

42 Pa.C.S. § 8354.

With respect to probable cause, Section 8352 provides:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352.

"[T]he clear language of Section 8351 permits a cause of action to be based on gross negligence **or** lack of probable cause.  Gross negligence is defined as the want of even scant care and the failure to exercise even that care which a careless person would use." *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 973 (Pa. Super. 2011) (citations omitted) (emphasis in original).  However, "as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case.  Lawyers can safely act upon the facts stated by their clients." *Id.*

Instantly, as the trial court concluded, Appellant's conviction for murder gave rise to probable cause for the wrongful death action. *See* Trial Ct. Op. at 2. The damages in the wrongful death action would have included "the value of the services the victim would have rendered to his family if he had lived." *See Amato*, 116 A.3d at 625 (citation omitted). As noted above, it appears that the jury did not accept the damages estimate by Albu Quant, LLC, or Dr. van der Goes. However, nothing in the record demonstrated that their estimate was palpably false, or that Attorney Howell proceeded without probable cause based on the information available to him.

Therefore, even if Appellant pled facts suggesting that there were ulterior motives for bringing the wrongful death action, Appellant has not established that Attorney Howell violated the Dragonetti Act by commencing the wrongful death action. For the same reasons, Appellant's claim that Attorney Howell was grossly negligent in procuring or relying on the Albu Quant report lacks merit.

In sum, we discern no factual or legal support for Appellant's claim that Attorney Howell acted without probable cause or was grossly negligent in procuring the Albu Quant report. *See Stricker*, 31 A.3d at 973. Therefore, we find no error in the trial court's conclusion that Appellant's wrongful use of civil proceedings claim was frivolous. *See Ocasio*, 979 A.2d at 354.

### Abuse of Process against Attorney Howell

Lastly, Appellant's claim for abuse of process against Attorney Howell is similar to his argument regarding wrongful use of civil proceedings. Appellant

- 21 -

asserts that he adequately pled that Attorney Howell "perverted the civil process" by pursuing an action instigated by the CVC and then by procuring and advancing false evidence of damages. Appellant's Brief at 25. Appellant's arguments focus on the bad intentions of Attorney Howell, Albu Quant, LLC, and Dr. van der Goes, as well as the decedent's family, for bringing the wrongful death action against him. Appellant again argues that in seeking damages for wrongful death, Attorney Howell was complicit in pursuing compensation for the CVC, not the decedent's family.

> A claim of abuse of process
>
> is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. . . . **The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure**. In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . .; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Greenberg v. McGraw*, 161 A.3d 976, 990 (Pa. Super. 2017) (citations omitted) (emphasis in original).

Instantly, our review reveals that Appellant failed to plead an act or threat unauthorized by legal process. Nor did he allege an illegitimate objective in the use of the legal process by Attorney Howell. Further, Appellant's bald assertions that the wrongful death action was undertaken to

reimburse the CVC are not tantamount to the perversion of the legal process for the purposes of benefit to Attorney Howell or the decedent's family. Accordingly, Appellant's claim that Attorney Howell sought a goal not authorized by the wrongful death action is frivolous where, as here, Attorney Howell simply pursued the wrongful death action to an unsuccessful end. Therefore, we find no basis to disturb the trial court's ruling that Appellant's abuse of process claim was frivolous. **See Ocasio**, 979 A.2d at 354.

### Conclusions

In sum, we find no reversible error in the trial court's conclusion that Appellant's actions against Dr. van der Goes, Albu Quant, LLC, and Attorney Howell were frivolous. Because Appellant's actions lacked any basis in law or fact, we conclude that the dismissal of his complaint under Rule 240(j) did not violate Appellant's due process rights. **See Conover**, 609 A.2d at 560.

Lastly, we conclude that the trial court properly denied Appellant's application for leave to proceed *in forma pauperis* in the underlying action based on its determination that Appellant's claims were frivolous. **See** Pa.R.C.P. 240(j).

Order affirmed.

President Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/11/20</u>